**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

BONNIE NASON, as Administrator of the
Estate of Alisha Patricia Nason,

                                        9:25-cv-435
                    Plaintiff,            (ECC/CBF)

v.

FRANKLIN COUNTY, FRANKLIN
COUNTY SHERIFF'S DEPARTMENT,
GLENN SCHROYER, MD, LISA CLARK,
RN, and JOHN/JANE DOES 1-3,

                    Defendants.

---

Rob Rickner, *Esq.*, *for Plaintiff*
Stephen M. Groudine, *Esq.*, *for Defendants*

**Hon. Elizabeth C. Coombe, United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

Plaintiff Bonnie Nason, as administrator of the Estate of Alisha Patricia Nason (Nason),

began this action by filing a Complaint against Defendants Franklin County (County), the Franklin

County Sheriff's Department (Sheriff's Department), Glenn Schroyer,[1] Lisa Clark, and three

unidentified individuals on April 4, 2025. Complaint (Compl.), Dkt. No. 1. The Complaint alleges

violations of the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 and New York

state law in connection with Nason's death while detained in the Franklin County Jail.

Presently before the Court is a motion to dismiss the Complaint pursuant to Federal Rules

of Civil Procedure 12(b)(1) and 12(b)(6) filed by the named defendants (Defendants). Dkt. No. 7.

---

[1] The Complaint does not spell Schroyer's name consistently, and this decision uses the spelling
in the caption.

The motion is fully briefed.  *See* Dkt. Nos. 7-9, 12, 13.  For the following reasons, the motion to dismiss is granted in part and denied in part.

I.    **FACTS AND PROCEDURAL HISTORY**[2]

On December 27, 2023, Nason[3] "was first incarcerated in the Franklin County Jail." Compl. ¶ 16.  "Nason suffered from opiate addiction and had been receiving methadone to manage the illness."  *Id.*  Defendants Glenn Shroyer, MD and Lisa Clark, RN provided medical care at the jail.  *Id.* at ¶¶ 13, 14.

On approximately January 4, 2024, Defendant Schroyer prescribed "Sublocade in place of methadone" for Plaintiff.    Compl. ¶ 17.    "Sublocade is an opiate addiction management medication that only requires an injection every 30 days" and "releases buprenorphine slowly over time."  *Id.* at ¶ 18.  "Sublocade has a Food and Drug Administration ('FDA') required Risk Evaluation and Mitigation Strategy ('REMS')."  *Id.* at ¶ 20.  "A REMS is a strategy to manage known or potential risks associated with a drug and is required by the FDA to ensure the benefits of the drug outweigh its risks."  *Id.*  "Sublocade is administered monthly only by subcutaneous injection in the abdominal region by a healthcare provider and is only available through a restricted distribution called the Sublocade REMS."  *Id.*

"Sublocade operates by creating a mass in the injection site."  Compl. ¶ 22.  "It must be injected subcutaneously into the patient's abdomen."  *Id.*  "There, the medication forms a solid mass that dissolves over time."  *Id.*  "The training to administer Sublocade comes with multiple

---

[2] These facts are drawn from the Complaint.  The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations, *see Lynch v. City of New York*, 952 F.3d 67, 74–75 (2d Cir. 2020), but does not accept as true any legal conclusions, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[3] "Nason was a transgender man who was receiving gender-affirming care, and went by J.B. Nason, but as of the time of his death had not changed his name."  Compl. ¶ 10.  Consistent with the Complaint, masculine pronouns are used for Nason.

stark warnings." *Id.* at ¶ 23. "If it is injected intramuscularly, it dissolves faster than it should, causing an overdose." *Id.* "If injected intravenously, or allowed to otherwise leak into the bloodstream, the medication becomes clots that can cause numerous problems, like pulmonary embolisms." *Id.* Those "trained to administer Sublocade learn[] one lesson, repeatedly: Sublocade is administered monthly only by subcutaneous injection in the abdominal region." *Id.* at ¶ 24. "An injection anywhere else carries a serious risk of death." *Id.* After "Sublocade is administered, particularly for the first time, the patient must be monitored carefully for signs of respiratory distress, overdose, and other serious symptoms." *Id.* at ¶ 25. "The manufacturer encourages Narcan prescriptions along with Sublocade, so that an overdosing patient can save themselves in the event the medication dissolves too quickly." *Id.*

"On January 6, 2024, at 10:35 a.m., Nurse Clark gave . . . Nason a 300mg injection of Sublocade intramuscularly," and not "subcutaneously in the abdomen," creating "an immediate danger of death by overdose and embolisms from blood clots." Compl. ¶ 26. "Nason was then left without any medical staff to monitor him, and without Narcan." *Id.* at ¶ 27. "By the evening, he started feeling sick and demonstrating obvious signs of overdose, and he asked for medical help repeatedly, but his requests were ignored, either because there was no medical staff, or because the correction officers did not want to get" him help. *Id.* at ¶ 28. "The Sublocade was dissolving too quickly, giving him 30 days of medication all at once." *Id.* at ¶ 29. "Nason died within 24 hours of receiving the Sublocade injection." *Id.* at ¶ 30. "Nason died from lethal levels of buprenorphine, the active ingredient in Sublocade, and from fluid collecting in his lungs." *Id.* at ¶ 29.

On April 2, 2024, Plaintiff, as proposed administrator of Nason's estate, served the County with a notice of claim for injuries that "includ[ed] physical and emotional pain and suffering before

3

death, wrongful death, loss of enjoyment of life, and economic damages." [4]  Dkt. No. 7-2 at 1, 2.[5]

On December 23, 2024, the Franklin County Surrogate's Court filed a decree granting letters of administration with limitations to Plaintiff as administrator of Nason's estate, "limited to the prosecution and defense of the cause of action set forth in the petition."  Dkt. No. 7-8 at 1.  The petition included a "[l]awsuit against state of NY for wrongful death."[6]  *Id.* at 3.  On March 19, 2025, Plaintiff, as "Administrator" of Nason's estate, served an "amended notice of claim" on Franklin County.  Dkt. No. 7-6 at 1.

On October 2, 2025, more than two months after Defendants filed their motion to dismiss, the Surrogate's Court filed an amended decree granting letters of administration to Plaintiff as Administrator of Nason's estate, "limited to the prosecution and defense of the cause of action set forth in the petition." Dkt. No. 12-2 at 1.  The attached petition included a "[l]awsuit against County of Franklin for causes of action, inter alia, medical negligence, negligent hiring, wrongful death, violations of the United States Constitution and New York State Constitution, and, to the extent necessary, fil[ing] a late notice of claim."  Dkt. No. 12-2 at 3.

---

[4] The Court takes judicial notice of the notices of claim as documents incorporated by reference in the Complaint and integral to it.  *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."); *Subaru Distributors Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005) ("In determining the adequacy of the complaint, the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint.").

[5] Unless otherwise noted, citations to page numbers refer to pagination generated by the Court's ECF system.

[6] The Court takes judicial notice of the decree granting letters of administration and the decree granting amended letters of administration as public records.  *See Williams v. New York City Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020) (noting that courts "may consider public records that may be judicially noticed in ruling on motions made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure").

## II.   LEGAL STANDARD

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (citation omitted). A court may also "refer to evidence outside the pleadings" and "take judicial notice of documents in the public record, including state court filings." *Krajisnik Soccer Club, Inc. v. Krajisnik Football Club, Inc.*, No. 20-cv-1140 (LEK/TWD), 2021 WL 2142924, at *2 (N.D.N.Y. May 26, 2021) (quoting *Makarova*, 201 F.3d at 113 and *Windward Bora, LLC v. Bank of N.Y. Mellon,* No. 19-cv-858, 2020 WL 7042761, at *2 (E.D.N.Y. Nov. 30, 2020)).

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc*., 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2 (S.D.N.Y. Sept. 22, 2017) (quoting *Twombly*, 550 U.S. at 555). A court must accept as true all well-pled factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth*., 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Comm'ns, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a

court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.     DISCUSSION

The Complaint asserts two federal claims under 42 U.S.C. § 1983 against Defendants: (1) deprivation of due process under the Fourteenth Amendment, Compl. at ¶¶ 34–40 and (2) failure to intervene and conspiracy to deprive Nason of his rights, *id.* at ¶¶ 41–46.  The Complaint also asserts three claims under New York law: (1) medical negligence against all Defendants except the Sheriff's Department, *id.* at ¶¶ 47–51; (2) negligent hiring, screening, retention, supervision, and training against the County and the Sheriff's Department, *id.* at ¶¶ 52–23; and (3) deprivation of due process under the New York State Constitution against all Defendants, *id.* at ¶¶ 54–57.

### A.  Jurisdiction

Defendants move to dismiss for lack of subject matter jurisdiction because (1) Plaintiff was not the duly appointed administrator of Nason's estate when she filed the Complaint, Defendants' Memorandum of Law (Def. Mem.) at 10–11, Dkt. No. 7-9, and (2) regarding the state law claims, Plaintiff did not comply with New York's notice of claim requirements for suits against municipalities,[7] *id.* at 8–10.  Plaintiff responds that (1) although "the letters of administration had a technical defect," that defect has been corrected, and at most, that defect affects capacity to sue, a non-jurisdictional requirement, Plaintiff's Memorandum of Law (Pl. Mem.) at 14–15, Dkt. No. 12, and (2) the New York State Court of Appeals has plainly decided that next of kin may serve notices of claim, *id.* at 11.

---

[7] Defendants do not explicitly state that this is a jurisdictional argument, and there appears to be a split in authority about whether New York's notice of claim requirements are jurisdictional or procedural, *Yennard v. Herkimer BOCES*, No. 6:16-cv-556 (GTS/ATB), 2017 WL 11317859, at *14 (N.D.N.Y. Mar. 27, 2017) (collecting cases), but it is not necessary to reach that issue.

### 1.  Notice of Claim

Defendants argue that Plaintiff did not comply with  New York County Law § 52 and New York General Municipal Law § 50-e because she was only a proposed administrator of Nason's estate when she first served the County with a notice of claim, and although she was the administrator of Nason's estate when she served the amended notice of claim, her authority was limited to a suit against New York State.  Def. Mem. 8–10.  According to Defendants, "a notice of claim alleging wrongful death may only be filed after 'the appointment of a representative of the decedent's estate.'"  *Id.* at 9 (quoting New York General Municipal Law § 50-e).  Plaintiff responds that the New York State Court of Appeals decided this issue in *Winbush v. City of Mount Vernon*, 306 N.Y. 327 (1954), and next of kin may serve a notice of claim on municipalities in wrongful death actions before appointment as an administrator.  Pl. Mem. 11–12.  Defendants reply that "[c]ourts in New York State, well after" *Winbush* "have repeatedly and recently held that a proposed administrator does not have the legal capacity to act on behalf of an estate" for notice of claim purposes, citing decisions from Orange and Nassau County Courts.  Defendants' Reply Memorandum of Law (Def. Reply) at 4, Dkt. No. 13.

New York County Law § 52 states: "[a]ny claim or notice of claim against a county for . . . injury or death . . . alleged to have been caused or sustained in whole or in part by or because of any misfeasance, omission of duty, negligence or wrongful act on the part of the county, its officers, agents, servants or employees, must be made and served in compliance with [New York General Municipal Law § 50-e]."  New York General Municipal Law § 50-e states: "[i]n any case founded upon tort where a notice of claim is required by law as a condition precedent to the commencement of an action or special proceeding against a public corporation . . . or any officer, appointee or employee thereof, the notice of claim shall . . . be served in accordance with the

provisions of this section within ninety days after the claim arises; except that in wrongful death actions, the ninety days shall run from the appointment of a representative of the decedent's estate."

"The primary purpose of [New York General Municipal Law § 50-e], as often stated by the courts, is to give to a municipality prompt notice of . . . claims, so that investigation may be made before it is too late for investigation to be efficient." *Winbush*, 306 N.Y. at 333. "While no one except an administrator or executor may bring a death action, there is no reason, in statute or in reason, why a person, who is one of the next of kin to be benefited by a death action, may not file a notice of claim. . . ." *Id.* at 334; *see Cook v. Maine-Endwell Cent. Sch. Dist.*, 236 A.D.3d 1167, 1171 n.3 (3d Dep't 2025) (noting that "it has long been established that the next of kin— and even a nonrelative friend—may file and serve a timely notice of claim") (citing *Winbush*, 306 N.Y. at 330–34).

Here, Plaintiff served the County with a notice of claim on April 2, 2024, and that was less than 90 days after Nason's death. *See* Dkt. No. 7-2 at 1. Plaintiff later served the County with an amended notice of claim on March 19, 2025, and that was less than 90 days after she was appointed administrator of Nason's estate. *See* Dkt. No. 7-6 at 1. Both of the notices of claim were acceptable because Plaintiff was Nason's next of kin and served notice within the time period prescribed by New York General Municipal Law § 50-e.

Defendants do not dispute that Plaintiff complied with the notice requirements except that she served the first notice when she was merely the proposed administrator, and she served the second notice when she was the administrator, but her authority was for a suit against New York State. As a result, the gist of their argument appears to be that they received notice too early. Def. Mem. at 9 ("notice of claim alleging wrongful death may only be filed after 'the appointment of a

representative of the decedent's estate'"). But "there is no reason, in statute or in reason" why next of kin may not serve the notice of claim before appointment as the administrator. *Winbush,* 306 N.Y. at 334. The New York State Court of Appeals has never overruled *Winbush,* and the Third Department Appellate Division cited it favorably last year. *See Cook*, 236 A.D.3d at 1171 n.3. That clear statement of law is binding on this Court. *10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd.*, 21 F.4th 216, 221 (2d Cir. 2021) ("In construing New York law, we are 'bound . . . by the law of New York as interpreted by the New York Court of Appeals. . . .'") (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 739 F.3d 45, 48 (2d Cir. 2013)). The decisions from lower New York courts cited by Defendants do not affect this. Accordingly, Plaintiff's motion is denied on this basis.

### 2. Authority to Bring Suit

Defendants argue that only "the decedent's duly appointed personal representative" may bring wrongful death suits in New York, and that Plaintiff "does not have the legal authority or standing to bring this cause of action," because when the complaint was filed, Plaintiff was not yet the duly appointed administrator of Nason's estate and "the state of NY" is not a defendant. Def. Mem. at 10–11. Plaintiff admits that the letters of administration appointing her administrator "had a technical defect," but argues that defect was corrected. Def. Mem. at 15. Plaintiff also responds that even if she were not the duly appointed administrator, this would affect only capacity to sue and that is a non-jurisdictional issue that could be cured by substitution. Def. Mem. at 14–15.

Standing and capacity to sue are "distinct concepts." *Fletcher v. City of New London*, No. 3:16-cv-241, 2017 WL 690533, at *3 (D. Conn. Feb. 21, 2017). Standing is jurisdictional and requires the plaintiff to "have suffered an 'injury in fact' that is 'fairly traceable to the challenged

9

action of the defendant' and 'it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Id*. (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). "[S]tanding in federal court is a question of federal law, not state law," and "no matter its reasons," the fact that a state "thinks that a private party should" or should not have standing "cannot override [federal] settled law to the contrary." *Hollingsworth v. Perry*, 570 U.S. 693, 715 (2013).

On the other hand, capacity to sue, "involves a party's personal right to litigate in federal court." *Fletcher*, 2017 WL 690533, at *3. Unlike jurisdictional issues including standing, that "can be raised at any time, lack of capacity must be raised 'by a specific denial, which must state any supporting facts that are peculiarly within the party's knowledge.'" *Id.* (quoting Fed. R. Civ. P. 9(a)). Moreover, "[l]ack of capacity is generally not considered jurisdictional and is therefore waived if not specifically raised." *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 936 (2d Cir. 1998).

Capacity to sue for a representational plaintiff like Plaintiff, is determined "by the law of the state where the court is located." Fed. R. Civ. P. 17(b)(3). New York law therefore applies here. *See DuBois v. Beaury*, No. 1:20-cv-86 (FJS/CFH), 2020 WL 7024393, at *1 (N.D.N.Y. Nov. 30, 2020) (applying New York law pursuant to Fed. R. Civ. P. 17(b)(3)).

In New York, for wrongful death actions, "[t]he personal representative, duly appointed in this state or any other jurisdiction, of a decedent who is survived by distributees may maintain an action to recover damages for a wrongful act, neglect or default which caused the decedent's death against a person who would have been liable to the decedent." N.Y. Est. Powers & Trusts Law § 5-4.1(l). A "personal representative" is "a person who has received letters to administer the estate of a decedent." N.Y. Est. Powers & Trusts Law § 1-2.13. "The Court of Appeals has

instructed, repeatedly, that [New York's wrongful death] statute must be construed 'strictly.'" *In re September 11 Litig.*, 760 F. Supp. 2d 433, 443 (S.D.N.Y. 2011) (collecting cases).

When Plaintiff filed the Complaint, she had standing to sue because she sought damages for an "injury in fact," that is Nason's death, and she alleged that the injury was "fairly traceable" to actions taken by the Defendants. *See Fletcher*, 2017 WL 690533, at *6 (explaining that "while the Estate lacked capacity and was not the real party in interest, it did have standing" to sue for wrongful death); *see also id.* at *4 (stating that it was "incorrect" to "equate [a] lack of capacity with a lack of standing and subject matter jurisdiction," and refusing to dismiss the complaint filed by the pro se plaintiff for initial lack of capacity); *Purcell ex rel. Est. of Tyree v. City of New York*, No. 18-cv-3979, 2020 WL 2559796, at *6–7 (E.D.N.Y. May 19, 2020) (rejecting argument "equat[ing] Plaintiff's lack of a capacity with a lack of standing, which would trigger a jurisdictional defect").

Nonetheless, New York law is clear that only a duly appointed personal representative of the decedent's estate may bring a wrongful death action. *Carrick v. Cent. Gen. Hosp.*, 51 N.Y.2d 242, 250 n.2 (1980) ("It is well established that the existence of a qualified administrator is essential to the maintenance of the action and that the statutory right to recover for wrongful death does not even arise until an administrator has been named through the issuance of letters of administration.") (citation omitted). When Plaintiff filed the Complaint, she did not have the capacity to sue because she had received letters of administration, but they were limited to a wrongful death suit against New York State. Plaintiff did not become a qualified administrator and duly appointed representative until the Surrogate Court issued her the amended letters of administration on October 2, 2025.

The proper remedy is to allow Plaintiff to substitute herself in her capacity as the duly

appointed representative of Nason's estate by amending the Complaint. "A Rule 17(a) substitution of plaintiffs should be liberally allowed when the change is merely formal and in no way alters the original complaint's factual allegations as to the events or participants." *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20 (2d Cir. 1997). The Second Circuit allowed amendment where:

> First, "[t]he complaint's only pertinent flaw was the identity of the party pursuing those claims." In other words, the proposed amended complaint sought only to substitute one name for another; the factual and legal allegations of the complaint would remain unaltered. Second, there was no indication of "bad faith or . . . an effort to deceive or prejudice the defendants." Finally, the proposed substitution did not threaten to prejudice the defendants, who had timely notice of the substance of the allegations, the relevant parties, and their claims.

*Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.a.r.l*, 790 F.3d 411, 422 (2d Cir. 2015) (quoting *Advanced Magnetics*, 106 F.3d at 20–21) (citations omitted). Those requirements are all present here. Plaintiff is therefore directed to amend the complaint within 30 days to substitute herself in her capacity as the duly appointed representative of Nason's estate, and the Defendants' motion to dismiss is denied on this basis.

### B. Merits

#### 1. Uncontested Claims

Plaintiff does not contest the dismissal of all claims against the Sheriff's Department because it is an administrative arm of the County. Pl. Mem. at 22; *see Arrotta v. Ulster Cnty. Sheriffs Dep't/Emps.*, No. 22-cv-638 (GLS/TWD), 2022 WL 4235463, at *5 (N.D.N.Y. Sept. 14, 2022) ("[U]nder New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued.") (alteration in original) (quotation and citation omitted). Defendants' motion is therefore granted on this basis, and all claims against the Sheriff's Department are dismissed. Plaintiff also

12

does not contest the dismissal of the § 1983 claims against Schroyer and the unidentified defendants. Pl. Mem. at 22. Defendants' motion is therefore granted on this basis, and the § 1983 claims against Schroyer and the unidentified defendants are dismissed. Further, the Plaintiff does not contest the dismissal of the § 1983 failure to intervene and conspiracy claim against all Defendants, Pl. Mem. at 22, and that claim is dismissed against all Defendants. Finally, Plaintiff does not contest dismissal of the state law claim for negligent hiring, screening, retention, supervision, and training against the County and the Sheriff's Department, Pl. Mem. at 22, and that claim is dismissed.

### 2. § 1983 Due Process – Deliberate Indifference

#### a. Individual Liability

Defendants seek dismissal of Plaintiff's § 1983 claim against Clark arguing that she did not sufficiently plead subjective intent, the allegations "reflect at most negligent conduct," and she cannot establish deliberate indifference. Def. Mem. at 12. Plaintiff responds that Defendants do not accurately state the deliberate indifference requirements and that the allegations in the Complaint demonstrate at least reckless conduct. Pl. Mem. at 16–17.

A Fourteenth Amendment due process claim relying on deliberate indifference to the medical needs of a pretrial detainee "must meet two requirements: (1) that [the detainee] had a serious medical need . . . and (2) that [the defendants] acted with deliberate indifference to such need[]." *Charles v. Orange Cnty.*, 925 F.3d 73, 86 (2d Cir. 2019) (citing *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)).

"[D]eliberate indifference . . . can be shown by something akin to recklessness, and does not require proof of a malicious or callous state of mind." *Charles*, 925 F.3d at 86 (citing *Darnell v. Pineiro,* 849 F.3d 17, 33–34 (2017)). "Deliberate indifference . . . can be established by either

13

a subjective or objective standard. . . ." *Id.* at 87. "A plaintiff can prove deliberate indifference by showing that the defendant official 'recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to [the plaintiff's] health or safety.'" *Id.* (alteration in original) (quoting *Darnell*, 849 F.3d at 35). In the context of pretrial detention, a plaintiff "can allege either that the defendants *knew* that failing to provide the complained of medical treatment would pose a substantial risk to [the detainee's] health or that the defendants *should have known* that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health." *Id.* Nonetheless, a "plaintiff must show 'something more than mere negligence' to establish deliberate indifference in the Fourteenth Amendment context." *Id.* (quoting *Wyant v. Okst,* 101 F.3d 845, 856 (2d Cir. 1996)). "Thus, 'mere medical malpractice is not tantamount to deliberate indifference, but it may rise to the level of deliberate indifference when it involves culpable recklessness, i.e., an act or a failure to act . . . that evinces a conscious disregard of a substantial risk of serious harm.'" *Id.* (quoting *Cuoco v. Moritsugu,* 222 F.3d 99, 107 (2d Cir. 2000)). Whether a defendant "knew or should have known of the substantial risk of harm to the detainee is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Id.*

Here, Plaintiff has alleged a deliberate indifference claim against Clark. According to the Complaint, Nason was a pretrial detainee with a serious medical need, that is to have his opiate addiction managed with Sublocade in a safe manner. The Complaint also adequately alleges that Clark was deliberately indifferent to that need by alleging that (1) the FDA has a risk mitigation strategy for Sublocade, (2) training to administer Sublocade includes "stark warnings," (3) Clark failed to heed the warnings, (4) Clark administered Sublocade improperly, and (5) Clark failed to

14

monitor or treat Nason, resulting in his death.  Compl. ¶¶ 20, 23–25, 37.  Viewing the allegations as true and drawing all reasonable inferences in Plaintiff's favor as required at this stage of the litigation, these allegations are sufficient to allege "culpable recklessness" demonstrating deliberate indifference.  Accordingly, Defendants' motion to dismiss is denied as to Clark on the § 1983 deliberate indifference claim.

### b.  Municipal Liability

Defendants argue that the Complaint does not allege facts sufficient to support § 1983 liability for the County under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  Def. Mem. at 20–21.  Plaintiff responds that the Complaint adequately alleges *Monell* liability based on a failure-to-train theory.  Pl. Mem. at 18–19.

"To hold a [municipality] liable under § 1983, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."  *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020) (alteration in original) (quoting *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) and citing *Monell*, 436 U.S. at 690–91).

"To establish a municipal policy, practice, or custom, a plaintiff must provide evidence of (1) a formal policy endorsed by the municipality; (2) actions taken or decisions made by the municipality's policymakers, which caused the alleged civil rights violation; (3) a practice so widespread that it constitutes 'a custom or usage;' or (4) a failure by the municipality's policymakers to properly train or supervise their subordinates."  *Beckwith v. City of Syracuse*, 642 F. Supp. 3d 283, 292–93 (N.D.N.Y. 2022) (citing *Green v. City of New York*, 465 F.3d 65, 80–82 (2d Cir. 2006)).  A "pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."

15

*Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997)).  The Supreme Court has, however, "left open the possibility that, 'in a narrow range of circumstances," a pattern of similar violations might not be necessary to show deliberate indifference." *Id.* at 63 (quoting *Bryan Cnty.*, 520 U.S. at 409).  In other words, the "Court sought not to foreclose the possibility, however rare, that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Id.*

As an initial matter, the requirements articulated in *Connick* apply to motions to dismiss. *See Simms v. City of New York,* 480 F. App'x 627, 630–31 (2d Cir. 2012) (affirming district court's decision to dismiss complaint and applying *Connick's* requirements).  Applying *Connick* here, the Complaint does not sufficiently allege *Monell* liability under a failure-to-train theory.  The Complaint does not allege any prior incidents of improper Sublocade administration resulting in death or serious injury at the Franklin County Jail.  In addition, the Complaint's allegations do not fall into the "narrow range of circumstances" where failure-to-train liability can result from a single incident because the Complaint does not allege, for example, that detainees regularly receive Sublocade or that death or serious injury is a highly predictable result of that medication.  *See Connick,* 563 U.S. at 63 (explaining the limits of the exception to the pattern requirement). Accordingly, Defendants' motion to dismiss is granted as to the County on the surviving § 1983 claim.

### 3.  Medical Negligence

Defendants argue that Plaintiff's medical negligence claim against the County should be dismissed because the County cannot be liable under a *respondeat superior* theory given that the Complaint does not allege that Schroyer and Clark were County employees. Def. Mem. at 16.

16

Plaintiff responds that, drawing all reasonable inferences in her favor, she "is obviously claiming that these Defendants were County employees. Pl. Mem. at 19.

As Plaintiff points out, when deciding a motion to dismiss for failure to state a claim, this Court must draw all reasonable inferences in Plaintiff's favor. *EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014). The Complaint alleges that Schroyer and Clark "provided medical care in the Franklin County Jail." Compl. ¶¶ 13, 14. Although the Complaint could have specifically alleged that Schroyer and Clark were County employees—and may be amended to do so—it is a fair inference that Schroyer and Clark were County employees. Accordingly, Defendants' motion is denied on this basis.

### 4. New York State Constitution Due Process

Defendants argue that Plaintiff's claims under the New York State Constitution should be dismissed because they are duplicative of her § 1983 claims. Def. Mem. at 21–22. Plaintiff responds that her claim is not duplicative as to the County because no other claim would allow her to bring a due process violation claim on a *respondeat superior* theory. Pl. Mem. at 20–21.

"The New York State Constitution provides a private right of action where remedies are otherwise unavailable at common law or under § 1983." *Allen v. Antal*, 665 F. App'x 9, 13 (2d Cir. 2016) (citing *Brown v. State of New York*, 89 N.Y.2d 172, 192 (1996)). Even when § 1983 provides a remedy against individuals for a constitutional violation, a plaintiff may still bring a due process claim against a municipality under the New York State Constitution relying on a *respondeat superior* theory. *See Buari v. City of New York*, 530 F. Supp. 3d 356, 409 (S.D.N.Y. 2021) (allowing a due process claim under the New York State Constitution to proceed on a *respondeat superior* theory against a municipality even after dismissing the individual defendants); *see id.* (collecting cases).

17

Here, the New York State Constitution is the only means for Plaintiff to assert a *respondeat superior* theory against the County for a due process violation. Accordingly, Defendants' motion is denied as to this claim.

### 5.  Punitive Damages

Defendants argue that Plaintiff may not seek punitive damages from government entities and individuals acting in their official capacity. Def. Mem. at 22–23. Plaintiff does not respond. *See generally* Pl. Mem.

Municipalities are immune from punitive damages in § 1983 actions. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Municipalities are also immune from punitive damages for actions under New York law. *Sharapata v. Town of Islip*, 56 N.Y.2d 332, 339 (1982). Accordingly, to the extent that Plaintiff seeks punitive damages against the County or the individual Defendants acting in their official capacities, the motion to dismiss that portion of the prayer for relief is granted.

## IV.     LEAVE TO AMEND

Plaintiff seeks, in the alternative, to amend the Complaint. Pl. Mem. at 21. Except for circumstances not relevant here, Federal Rule of Civil Procedure 15(a) allows a party to "amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(1)–(2). A court should "freely give leave when justice so requires, but it may, in its discretion, deny leave to amend 'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023) (quoting *Bensch v. Est. of Umar*, 2 F.4th 70, 81 (2d Cir. 2021)).

Here, the Court will permit Plaintiff to file an amended complaint within 30 days, but she may not amend her claims against the Sheriff's Department because amendment would be futile.

18

The amended complaint must substitute Plaintiff as the duly appointed representative of Nason's estate. In addition, the amended complaint will replace the existing complaint, and it must be a complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect.") (quoting *Int'l Controls Corp. v. Vesco,* 556 F.2d 665, 668 (2d Cir. 1977)).

## V.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motion to dismiss, Dkt. No. 7, is **GRANTED IN PART** and **DENIED IN PART**; it is further

**ORDERED** that Plaintiff's claims against the Franklin County Sheriff's Department are **DISMISSED WITH PREJUDICE**; it is further

**ORDERED** that Plaintiff's § 1983 claims against Defendant Schroyer and the unidentified defendants; Plaintiff's § 1983 claim against Defendant Franklin County; Plaintiff's § 1983 claim for failure to intervene and conspiracy; and Plaintiff's state law claim for negligent hiring, screening, retention, supervision, and training are **DISMISSED WITHOUT PREJUDICE**; it is further

**ORDERED** that any portion of Plaintiff's prayer for relief seeking punitive damages against the County or the individual Defendants acting in their official capacities is **DISMISSED WITH PREJUDICE;** it is further

**ORDERED** that Plaintiff is granted leave to amend to the extent authorized in this Memorandum-Decision and Order; it is further

19

**ORDERED** that Plaintiff must amend the Complaint to substitute herself in her capacity as the duly appointed representative of Nason's estate within 30 days.

**IT IS SO ORDERED.**

Dated: March 18, 2026

_____
Elizabeth C. Coombe
U.S. District Judge